UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

RONALD E. ZYLSTRA, D.V.M.,

    Defendant.

_____/

Case No. 1:24-cv-00963

Hon. Paul L. Maloney
U.S. District Judge

## CONSENT DECREE

Plaintiff, the United States of America (the "United States"), filed a Complaint seeking an injunction and civil penalties (the "Complaint"), alleging that Defendant Ronald E. Zylstra, D.V.M. ("Defendant") has violated the Controlled Substances Act, 21 U.S.C. §§ 801 *et seq.* (the "CSA"), that the United States is entitled to injunctive relief against Defendant, and that the Defendant is liable to the United States for civil monetary penalties for his CSA violations. The Parties stipulate to the entry of this Consent Decree to resolve the disputed matters that the United States asserts in the Complaint, with the following terms and provisions.

### The Parties

A.    Plaintiff is the United States of America.

B.    Defendant is a resident of Kent County, Michigan. Defendant maintains a Drug Enforcement Administration ("DEA") controlled substance registration, No. BZ8669460, which authorizes him to dispense, prescribe, and administer controlled

substances. Defendant also maintains separate licensure with the State of Michigan to practice as a veterinarian and handle controlled substances.

### Recitals

C. In Count I of the Complaint, the United States alleges that Defendant violated the CSA. First, the United States alleges that, from July 13, 2021 through December 20, 2023, Defendant failed to maintain accurate dispensing records in violation of 21 U.S.C. §§ 827(a)(3), 842(a)(5), and 21 C.F.R. § 1304.22(c), and that Defendant is liable to the United States for each violation under 21 U.S.C. § 842(c)(1)(B)(i) and 28 C.F.R. § 85.5. Second, the United States alleges that from July 13, 2021 to November 2, 2023, Defendant failed to conduct a biennial inventory in violation of 21 U.S.C. § 827(a)(1) and 21 C.F.R. § 1304.11, and that Defendant is liable to the United States for each violation under 21 U.S.C. § 842(c)(1)(B) and 28 C.F.R. § 85.5. Third, the United States alleges that from January 12, 2021 to August 4, 2023, Defendant failed to record the receipt of Schedule II controlled substances in violation of 21 U.S.C. § 828 and 21 C.F.R. § 1305.13, and that Defendant is liable to the United States for each violation under 21 U.S.C. § 842(c)(1)(B) and 28 C.F.R. § 85.5. In Count II of the Complaint, the United States alleges that, as a result of the violations described in this paragraph, the United States is entitled to injunctive relief under 21 U.S.C. §§ 843(f), and 882(a). The conduct described in this paragraph is referred to as the "Covered Conduct."

D. This stipulated Consent Decree is neither an admission of liability by Defendant nor a concession by the United States that its claims are not well founded.

E. To avoid the delay, uncertainty, inconvenience, and expense of protracted litigation of the above claims, the Parties reach a full and final settlement as set forth below:

### Terms and Conditions

NOW, THEREFORE, before the taking of any testimony, without the admission of any issue of fact or law, in consideration of the mutual promises, covenants, and obligations set forth below, and for good and valuable consideration as stated here, the Parties agree as follows, and IT IS HEREBY ORDERED, ADJUDGED, AND DECREED as follows:

### *Jurisdiction and Venue*

1. The Court has jurisdiction pursuant to 21 U.S.C. §§ 842(c)(1), 843(f)(2), and 882(a), and 28 U.S.C. §§ 1331, 1345, and 1355(a).

2. Venue is appropriate in this District pursuant to 21 U.S.C. § 843(f)(2) and 28 U.S.C. §§ 1391(b)(1), 1391(b)(2), and 1395(a).

3. The Complaint states a claim upon which relief can be granted.

4. The Parties recognize, and the Court by entry of this Consent Decree finds, that this Consent Decree has been negotiated by the Parties and that this Consent Decree is fair, reasonable, and in the public interest.

### *Civil Monetary Penalty*

5. Defendant shall pay to the United States a principal amount of THIRTY-FIVE THOUSAND DOLLARS ($35,000.00) (the "Settlement Amount"). Within thirty (30) business days of entry of this Consent Decree, Defendant shall pay

3

the United States an initial sum of TEN THOUSAND DOLLARS ($10,000.00). Defendant shall pay the remaining Settlement Amount of TWENTY-FIVE THOUSAND DOLLARS, plus 8% interest, in increments of SIX-HUNDRED TEN DOLLARS AND THIRTY-TWO CENTS ($610.32) due on the first day of each month, beginning on December 1, 2024, for a period of forty-eight months. All payments to the United States under this paragraph shall be made by electronic funds transfer pursuant to written instructions to be provided by the United States Attorney's Office for the Western District of Michigan.

### *Injunctive Provisions*

6.  Dispensing. For a period of five years after entry of this Consent Decree, Defendant shall not directly or indirectly dispense, assist in the dispensing, or otherwise facilitate the dispensing of any controlled substance as defined in the CSA or its implementing regulations found at 21 C.F.R. parts 1300-1399 (the "Implementing Regulations").

7.  Prescribing. For a period of five years after entry of this Consent Decree, Defendant shall not prescribe any controlled substance as defined in the CSA and its Implementing Regulations to any of the following individuals or their pets: Defendant, T.W.[1], any current employee of Kentwood Veterinary Clinic or any other clinic owned or operated by Defendant, any of Defendant's children or step-children, any of Defendant's parents or step-parents, or any of Defendant's siblings or step-siblings.

---

[1] The identity of this individual is known to the Parties, but in this public court filing we have used only her initials to protect her privacy.

4

8. *Administering.* For a period of five years after entry of this Consent Decree, Defendant shall not directly or indirectly administer, assist in the administering, or otherwise facilitate the administering of any controlled substance as defined in the CSA and its Implementing Regulations, except he may administer, directly or indirectly, the following controlled substances for legitimate medical purposes during veterinary procedures: morphine, tiletamine-zolazepam, butorphanol tartrate, midazolam, ketamine, pentobarbital sodium (euthanasia solution), and extended release buprenorphine hydrochloride. Defendant shall only administer these controlled substances in injectable form.

9. *Ordering.* For a period of five years after entry of this Consent Decree, Defendant shall not directly or indirectly order, or direct or facilitate the ordering of, any controlled substances as defined in the CSA and its Implementing Regulations, except he may order, directly or indirectly, the following controlled substances for administration during legitimate veterinary procedures: morphine, tiletamine-zolazepam, butorphanol tartrate, midazolam, ketamine, pentobarbital sodium (euthanasia solution), and extended release buprenorphine hydrochloride. Defendant shall only order these controlled substances in injectable form.

10. *Records and Reports.* Defendant shall make, keep, and furnish any record, report, notification, declaration, order or order form, statement, invoice, or information required under the CSA and its Implementing Regulations.

11. *Monitoring.* For a period of five years after entry of this Consent Decree, DEA may, at its election, request and review copies of any prescriptions written by

5

Defendant and all medical records related to or supporting those prescriptions. Such request must be in writing, and Defendant must provide the requested records within thirty (30) days of receiving the request.

12. <u>Noncompliance by Defendant</u>. If, at any time within five years of entry of this Consent Decree, DEA determines that Defendant has failed to comply with any provision of this Consent Decree, DEA may, as and when it deems necessary, notify Defendant in writing of the noncompliance and order Defendant to take corrective action, including, but not limited to, ordering Defendant to permanently cease ordering, distributing, dispensing, prescribing, and/or administering controlled substances in any capacity. This remedy shall be separate and apart from, and in addition to, any other remedy available to the United States under this Consent Decree or under the law, including additional civil monetary penalties. The following process and procedures apply when DEA issues an order under this paragraph:

    a. Defendant will implement the corrective action ordered by the DEA without delay.

    b. If Defendant notifies and provides reasons to DEA that he does not agree with any DEA order under this paragraph, DEA will review his notification and reasons and within thirty (30) days thereafter, affirm, modify, or withdraw its order in writing, as DEA deems appropriate. If DEA affirms or modifies its order, it will explain the basis for its decision in writing. This notification shall constitute final agency action.

   c. If DEA affirms or modifies its order, Defendant may, within thirty (30) days, seek judicial review of the DEA's order in this Court. Defendant shall continue to diligently implement DEA's order while judicial review is pending unless and until the Court or any higher court reverses, stays, or modifies DEA's order.

   d. All decisions conferred upon DEA in this paragraph shall be vested in DEA's discretion and, to the extent that these decisions are subject to review, shall be reviewed by the Court under the arbitrary and capricious standard set forth in 5 U.S.C. § 706(2)(A). Review by the Court of any DEA decision rendered pursuant to this paragraph shall be based exclusively on the written record before DEA at the time the decision was made. No discovery shall be taken by any party.

  13. <u>Meaning of Terms.</u> The meanings of the terms dispensing, dispense, administering, and administer as used in Paragraphs 6 through 12 shall have the meanings defined in 21 U.S.C. § 802.

  14. <u>Contempt.</u> Should the United States bring and prevail in a contempt action to enforce the terms of this Consent Decree, Defendant shall, in addition to other remedies, reimburse the United States for its attorneys' fees (including overhead), travel expenses incurred by attorneys and witnesses, investigational and analytical expenses, expert witness fees, administrative and court costs, and any other costs or fees incurred by the United States in bringing such an action.

  15. Defendant's obligations under this Consent Decree shall be in addition to, and not in derogation of, all requirements imposed on him under all applicable

federal, state, and local laws, including the requirements of the CSA and its Implementing Regulations.

### *Other Terms*

16. Subject to the exceptions in Paragraph 17 (concerning reserved claims), and subject to Paragraph 18 (concerning disclosure of assets) and Defendant's compliance with the terms in Paragraphs 5–11, and upon the United States' receipt of the Settlement Amount plus interest due under Paragraph 5, the United States releases Defendant from any civil monetary claims and civil injunctive claims the United States has for the Covered Conduct under the Controlled Substances Act, 21 U.S.C. §§ 801-904.

17. Notwithstanding the releases given in Paragraph 16 of this Consent Decree, or any other term of this Consent Decree, the following claims and rights of the United States are specifically reserved and are not released:

    a. Any liability arising under Title 26, U.S. Code (Internal Revenue Code);

    b. Any criminal liability;

    c. Except as explicitly stated in this Agreement, any administrative liability or enforcement right, including the suspension and debarment rights of any federal agency;

    d. Any liability to the United States (or its agencies) for any conduct other than the Covered Conduct;

    e.  Any liability based upon obligations created by this Agreement; and

    f.  Any liability of individuals other than Defendant.

  18.  Defendant has provided sworn financial disclosures and supporting documents (together "Financial Disclosures") to the United States, and the United States has relied on the accuracy and completeness of those Financial Disclosures in stipulating to this Consent Decree. Defendant warrants that the Financial Disclosures are complete, accurate, and current as of the date the Parties sign the stipulated Consent Decree.  If the United States learns of asset(s) in which Defendant had an interest of any kind as of the date the Parties sign the stipulated Consent Decree (including, but not limited to, promises by insurers or other third parties to satisfy Defendant's obligations under this Consent Decree) that were not disclosed in the Financial Disclosures, or if the United States learns of any false statement or misrepresentation by Defendant relating to the Financial Disclosures, and if such nondisclosure, false statement, or misrepresentation changes the estimated net worth set forth in the Financial Disclosures by $20,000.00 or more, the United States may at its option collect the full Settlement Amount in accordance with the Agreement plus one hundred percent (100%) of the net value of Defendant's previously undisclosed assets.

  19.  <u>Default</u>.  Defendant agrees to the following:

    a.  In the event that Defendant fails to pay the Settlement Amount pursuant to the payment schedule set forth in Paragraph 5 above, Defendant shall

9

be in default of Defendant's payment obligations ("Default"). The United States will provide a written Notice of Default, and Defendant shall have an opportunity to cure such Default within thirty (30) days from the date of receipt of the Notice of Default by making the payment due under the payment schedule. Notice of Default will be delivered to Ronald Zylstra at 601 44th Street SE, Kentwood, Michigan 49548, with copy to Arthur Jalkanen, Esq., at Schwartz & Jalkanen, P.C., 24445 Northwestern Highway, Suite 209, Southfield, MI, 48075, or to such other representative as Defendant shall designate in advance in writing. If Defendant fails to cure the Default within thirty (30) days of receiving the Notice of Default and in the absence of an agreement with the United States to a modified payment schedule ("Uncured Default"), the remaining unpaid balance of the Settlement Amount shall become immediately due and payable.

      b.    In the event of Uncured Default, and on petition by the United States, Defendant agrees that the Court may amend this Consent Decree to enter an amended judgment against Defendant for the entire Settlement Amount, less any payments previously made to the United States under this Consent Decree, plus a $2,000.00 penalty. Defendant agrees to pay the United States all reasonable costs of collection and enforcement of this Consent Decree, including attorneys' fees and expenses. In the event that the United States files a petition pursuant to this paragraph, Defendant waives and agrees not to plead, argue, or otherwise raise any defenses of statute of limitations, laches, estoppel or similar theories, to any civil or administrative claims that are (a) filed by the United States against Defendant

10

within 120 days of Uncured Default, and (b) relate to the Covered Conduct, except to the extent these defenses were available on the entry of this Consent Decree.

20. Defendant waives and shall not assert any defenses Defendant may have to any criminal prosecution or administrative action relating to the Covered Conduct that may be based in whole or in part on a contention that, under the Double Jeopardy Clause in the Fifth Amendment of the Constitution, or under the Excessive Fines Clause in the Eighth Amendment of the Constitution, this Consent Decree bars a remedy sought in such criminal prosecution or administrative action.

21. Defendant fully and finally releases the United States, its agencies, officers, agents, employees, and servants, from any claims (including attorneys' fees, costs, and expenses of every kind and however denominated) that Defendant has asserted, could have asserted, or may assert in the future against the United States, its agencies, officers, agents, employees, and servants, related to the Covered Conduct or the United States' investigation or prosecution thereof.

22. This Consent Decree is intended to be for the benefit of the Parties only. The Parties do not release any claims against any other person or entity.

23. Each Party shall bear its own legal and other costs incurred in connection with this matter, including the preparation and performance of this Consent Decree.

24. Each Party and signatory to this Consent Decree represents that it freely and voluntarily enters into this Consent Decree without any degree of duress or compulsion.

25. This Consent Decree is governed by the laws of the United States. The exclusive venue for any dispute relating to this Consent Decree is the United States District Court for the Western District of Michigan.

26. This Consent Decree constitutes the complete agreement between the Parties. This Consent Decree may not be amended except by written consent of the Parties and order by the Court. Forbearance by the United States from pursuing any remedy or relief available to it under this Consent Decree shall not constitute a waiver of rights under this Consent Decree.

27. The undersigned counsel represent and warrant that they are fully authorized to execute this Consent Decree on behalf of the persons and entities indicated below.

28. This Consent Decree is binding on Defendant's successors, transferees, heirs, and assigns.

29. All Parties consent to the United States' disclosure of this Consent Decree, and information about this Consent Decree, to the public.

30. The Court shall retain jurisdiction over this matter for purposes of enforcing the Consent Decree.

31. The Parties may execute this Consent Decree in counterparts.

**IT IS SO ORDERED.**

DATED: September 23, 2024        /s/ Paul L. Maloney
                                 HON. PAUL L. MALONEY
                                 U.S. District Judge

The Parties hereby apply for and consent to the entry of this Consent Decree.

**FOR THE UNITED STATES OF AMERICA**

                                                  MARK A. TOTTEN
                                                  United States Attorney

DATED: 9-16-24        BY: *[signature]*
                                                  WHITNEY M. SCHNURR
                                                  ANDREW J. HULL
                                                  Assistant United States Attorneys
                                                  U.S. Attorney's Office for the
                                                  Western District of Michigan

DATED: 8/28/24        BY: CLAUDE REDD *(Digitally signed by CLAUDE REDD Date: 2024.08.28 15:43:19 -04'00')*
                                                  C. MARTIN REDD
                                                  Diversion Program Manager
                                                  Detroit Field Division
                                                  U.S. Drug Enforcement Administration

FOR RONALD E. ZYLSTRA, D.M.V.

DATED: 9-6-24     BY: _____ DVM
                       RONALD E. ZYLSTRA, D.M.V.

DATED: 9-12-24    BY: _____
                       ARTHUR JALKANEN
                       Schwartz & Jalkanen, P.C.
                       2445 Northwestern Highway, Suite 209
                       Southfield, Michigan 48075

                       *Counsel for Defendant*

14